United States District Court
Southern District of Texas
**ENTERED**
December 07, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **PETRA RAMIREZ,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B-14-179 |
| | § | |
| **ARTURO RENDON, ET AL.,** | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 20, 2015, Plaintiff Petra Ramirez ("Ramirez") filed a second amended complaint against Defendants Arturo Rendon ("Rendon"), Antonio Juarez ("Juarez"), Hector Gonzales[1] ("Gonzales") and Brownsville Independent School District ("BISD"), pursuant to 42 U.S.C. § 1983. Dkt. No. 29. At the time of the events listed in the complaint, Rendon served as BISD's Transportation Administrator; Juarez was the Assistant Superintendent for Human Resources; and Gonzales was a consultant for BISD. As relevant here, Ramirez pled that Rendon, Juarez and Gonzales entered into a civil conspiracy to violate Ramirez's right to freedom of speech, freedom of association, right to equal protection, and right to substantive and procedural due process. Dkt. No. 29.

On June 10, 2015, Gonzales filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 33. Ramirez filed a response brief. Dkt. No. 40.

On June 16, 2015, Rendon, Juarez, and BISD also filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), asserting that Ramirez failed to state a claim upon which relief could be granted against them. Dkt. No. 39. Ramirez filed a response. Dkt. No. 41.

---

[1] Ramirez referred to him as "Hector Gonzalez" in the complaint. Dkt. No. 29. In his motion to dismiss, Gonzales informed the Court of the correct spelling of his surname, which the Court uses in this Report and Recommendation.

1

After reviewing the record and the relevant case law, the Court recommends that the motions to dismiss be granted. Ramirez has not pled sufficient facts to state a claim upon which relief can be granted as to any of her claims.

## I. Background

### A. Factual Background

Ramirez had been a bus monitor for BISD for 22 years "when the events giving rise to this complaint occurred." Dkt. No. 29, p. 9. Ramirez has pled that she "met or exceeded her job performance evaluations" during her employment. Id. Ramirez was – and continues to be – the president of "Choferes Unidos;" which is "a local union organized within the BISD's transportation department." Id.

On August 20, 2012, Ramirez, and other transportation department employees, met with BISD's superintendent – Carl Montoya, who is not a defendant in this case – "regarding their rights in the workplace." Dkt. No. 29, p. 3. At this meeting, the parties discussed Rendon's "decision to take away the seniority status of the bus drivers and monitors." Id, p. 10. Choferes Unidos "had fought hard in the past to get seniority status so those who worked with BISD the longest received first choice of hourly assignment[s] when bus routes were designated." Id.

At the meeting, Choferes Unidos representatives informed the superintendent that they intended to gather signatures concerning Rendon's decision to dismantle the seniority system. Dkt. No. 29, p. 10. The superintendent asked that any completed petitions be presented to him, but did not specify a time or place at which the petitions were to be presented. Id. While not explicitly stated as such, it appears that Choferes Unidos spent the following two days collecting signatures of transportation department employees who were upset by Rendon's decision.

On August 22, 2012, Ramirez met with Rendon. Dkt. No. 29, p. 12. According to the complaint, while Ramirez does not speak English, Rendon spoke to Ramirez in English during the meeting. Id. The complaint alleges that Rendon speaks Spanish "fluently" and

2

was aware that Ramirez did not speak English. Id. Ramirez alleges that while she did not not completely understand everything Rendon said during the meeting, she understood that "he was upset about her acquiring signatures." Id.

After meeting with Rendon, Ramirez went to a back-to-school pep rally at Rivera High School. Dkt. No. 29, p.11. The rally was held after school hours and the superintendent was present at the rally. Id. Approximately 20 transportation department employees were also present at the pep rally, at which time their signed petitions – regarding Rendon's decision about seniority – were presented to the superintendent by a bus driver as the superintendent was leaving the event. Id. Ramirez "waited outside on a bench for the [pep rally] to end." Id. Ramirez "remained away from the bus drivers that were presenting the petition to the Superintendent." Id, p. 12.

After the rally ended, BISD board member Catalina Presas-Garcia encountered fellow BISD board member Minerva Pena in the parking lot of Rivera High School. Dkt. No. 29, p. 12. Presas-Garcia "started making a scene" and asked Pena "if she saw how the bus driver's union attacked the Superintendent?" Id. (internal quotations omitted). Pena responded that Presas-Garcia "was making it all up," and that Pena "saw what happened and that all [the bus drivers] did was present a petition with signatures." Id. Presas-Garcia responded that "something has to be done about this" and "stormed off." Id.

On August 23, 2012 – the day following the rally – Presas-Garcia called Rendon to complain "about the presentment of the petition to the superintendent." Dkt. No. 29, p. 13. According to the complaint, Rendon, without doing any further investigation of the facts, emailed Jimmy Haynes – Rendon's supervisor – requesting that Ramirez "be placed on administrative leave immediately pending an investigation regarding an incident that occurred last night (August 22, 2012) at the Rivera High School." Id.

On August 24, 2012, Ramirez was suspended with pay. Dkt. No. 29, p. 13. She received a letter from Montoya, which outlined the conditions of her suspension. Id. Ramirez was not permitted to work and was "directed to refrain from having any contact whatsoever

3

with district employees, students or their parents and BISD Board Members. Additionally, while the investigation is being conducted, you are to stay away from all district campuses and facilities." Id, p. 13. Ramirez claims that these conditions had the effect of "stripp[ing]" her of her ability to act as the union president since the letter from the superintendent barred her from speaking to the union members.[2] Id. According to the complaint, the alleged basis for Ramirez's suspension was "workplace misconduct for initiating and following through with a plan to disrupt" the pep rally. Id, p. 14.

Ramirez asserts that these allegations were false and were lodged against her for three reasons: "(1) to place Plaintiff on leave with pay with restrictions that would take her out of the election process scheduled for November of 2012; (2) to punish, harass and intimidate those employees who exercised their First Amendment right to freedom to petition for the redress of grievances and (3) as retaliation for her political association." Id, p. 15.

On September 3, 2012, Lisa Frausto, an employee of BISD's human resources department, was tasked with investigating whether Ramirez's suspension was justified. Dkt. No. 29, p. 15. On September 14, 2012, Frausto concluded that the allegations against Ramirez had "no merit" and recommended that Ramirez be permitted to return to work. Id.

Despite Frausto's recommendation, Rendon did not permit Ramirez to return to work. Dkt. No. 29, pp. 16-17. The complaint alleges that this was done at Presas-Garcia's insistence; Presas-Garcia was up for re-election in November 2012 and the complaint alleges that she did not want Ramirez or the bus drivers' union campaigning against her. Id.

The complaint alleges that Rendon then decided to have Tony Juarez – the acting superintendent for human resources at BISD – to conduct a new investigation of Ramirez. Dkt. No. 29, p. 17. The complaint further alleges that on September 26, 2012, Juarez hired Hector Gonzales – who was a former BISD superintendent – to conduct his own

---

[2] The letter from Montoya, who – as identified earlier – is not a defendant in this case, is the only factual basis in the complaint for the directive that Ramirez was to stay away from district campuses and to not have contact with district employees.

4

investigation to come out with another result because Rendon, Juarez, and Gonzales "were not satisfied with the findings of Lisa Frausto." Id, p. 18.[3]

The complaint asserts that Gonzales and Rendon "have been acting in concert since the days when" Gonzales was superintendent and Rendon was BISD's director of special education. Id. The complaint bases this conclusion upon the fact that a "Texas Education Agency hearing officer recommended terminating [Gonzales] because of his unwillingness to discipline [Rendon] when it was clear that [Rendon] was not competent to serve as director of Special Education." Id, pp. 6-7.

The complaint also notes that Presas-Garcia once worked as Gonzales's secretary and was the only BISD board member who did not vote to terminate Gonzales's contract as BISD superintendent. Id, p. 3. The complaint further alleges that Juarez, Rendon, and Gonzales "worked hard" in 2010 to elect certain candidates to serve as BISD trustees, including Luci Longoria, who was a close friend of Presas-Garcia. Id, p. 5. Thus, Ramirez appears to allege, what can best be described as, a political cabal amongst the BISD leaders against the union efforts of BISD's transportation employees.[4]

Again – according to the complaint – in conducting the investigation, Gonzales did not interview Ramirez and did not receive "new information to justify any change to the findings of Lisa Frausto." Dkt. No. 29, p. 19.

On October 17, 2012, Gonzales "finalized his report." Dkt. No. 29, pp. 19-20. The

---

[3] The Court notes that Rendon, Juarez, and Gonzales have personal experience regarding litigation of employment issues with BISD. In the past, each sued BISD for terminating their employment. Rendon v. BISD, Civil No. 10-198; Juarez v. BISD, Civil No. 09-14; Gonzales v. BISD, Civil No. 11-237. All three of these cases were resolved through settlement prior to trial. No adverse inference is drawn from these facts.

[4] The interrelationship between these various individuals is not of recent origin. For example, Longoria was elected to the BISD Board of Trustees in 2010 and the candidate that she defeated is the attorney representing Ramirez. Gary Long, BISD Board Looks to Get Off on Right Foot, Brownsville Herald, November 3, 2010, available at http://www.brownsvilleherald.com/news/valley/ article_da36b45d-180f-5e75-8c5e- 355b7 f6251b1.html.

5

report recommended that "appropriate disciplinary action" be taken against Ramirez and that if Ramirez returned to work at BISD, it be in a department other than the transportation department. Id. The complaint argues that the recommendation – that Ramirez not be placed in the transportation department – "clearly shows the intent of Defendants to rid Plaintiff from the transportation department to silence her free speech." Id.

It appears that Ramirez remained suspended with pay until November 26, 2012, when she returned to work at BISD in the food services department. Dkt. No. 29, p. 20. The next work day, which would have been November 27, 2012, Ramirez returned to work in the transportation department. Id. Ramirez's return to active employment occurred after the elections earlier that month.[5]

### B. Procedural History

On September 15, 2014, Ramirez filed a complaint against Rendon, Juarez, Gonzales, and BISD, pursuant to 42 U.S.C. § 1983. Dkt. No. 1.

On May 20, 2015, Ramirez filed a second amended complaint, which is the operative complaint in this case. Dkt. Nos. 28, 29. In the second amended complaint, Ramirez asserts that Rendon, Juarez, and Gonzales deprived her of "her substantive and procedural due process rights under the Due Process Clause of the Fourteenth Amendment" when they "deprived her of her First Amendment right to free speech, assembly, political association and right to freedom to petition for the redress of grievances." Dkt. No. 29, pp. 21-22. Thus, it appears that Ramirez is alleging that the Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution. Id, pp. 28-29.

On June 10, 2015, Gonzales filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 33. Gonzales asserts that Ramirez has not pled sufficient facts to establish the existence of a conspiracy;

---

[5] If the goal of the Defendants was to keep Ramirez from interacting with the union members until the elections took place, then their efforts were successful and may well constitute an abuse that should not be condoned. That said, whether those efforts constitute a violation of 28 U.S.C. § 1983 is a different question and is the only one before the Court.

6

Gonzales argues that Ramirez has only pled "mere[] conclusions" against him. Id, p. 6 Ramirez has filed a response, asserting that she pled sufficient facts to establish that a conspiracy existed and that Gonzales was a part of the conspiracy. Dkt. No. 9.[6]  No reply brief was filed.

On June 16, 2015, Rendon, Juarez, and BISD filed a motion to dismiss – pursuant to Fed. R. Civ. P. 12(b)(6) – for failure to state a claim upon which relief can be granted. Dkt. No. 39.  Rendon, Juarez, and BISD allege that Ramirez has not pled sufficient facts to support any of her claims. Id.  Ramirez filed a response, asserting that she pled sufficient facts to establish that a conspiracy existed and the conspirators violated her constitutional rights. Dkt. No. 15.  No reply brief was filed.

## II. Applicable Law

### A. 12(B)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief.  It is not a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. at 570.  Consistent with this requirement,

---

[6] In her response to this motion to dismiss – and to the later one filed by Rendon, Juarez and BISD – Ramirez argues that her "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dkt. Nos. 9, 15.  This argument is unavailing given that the Conley standard was "retired" by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009) (stating that "Twombly retired the Conley no-set-of-facts test . . ."). Thus, Ramirez seeks to employ a standard that was supplanted almost eight years ago.

7

"plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589. "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002). Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense. Iqbal, 556 U.S. at 678.

### B. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

### 1. Conspiracy

"A conspiracy may be charged under section 1983 as the legal mechanism through

which to impose liability on all of the defendants without regard to who committed the particular act." Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995). In order to properly plead a conspiracy claim pursuant to § 1983, the plaintiff must plead facts that suggest (1) an agreement to commit an illegal act and (2) the deprivation of constitutional rights as a result of the illegal act. Jabary v. City of Allen, 547 Fed. App'x. 600, 610-11 (5th Cir. 2013) (unpubl.) (citing Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994)).

At this stage of the proceedings, a plaintiff does not need to show that the agreement was probable; rather, the plaintiff is required to plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 550 U.S. at 556. The plaintiff must plead facts that when "placed in a context ... [raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id at 557.

A plaintiff must plead specific facts giving rise to the agreement; merely conclusory statements do not meet the standard. Priester v. Lowndes County, 354 F.3d 414, 420 (5th Cir. 2004) (citing Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986)). Having said this, a conspiracy may be pled using circumstantial evidence, but that evidence must be fact-based, rather than speculation and conjecture. Mack v. Newton, 737 F.2d 1343, 1350–51 (5th Cir. 1984). Establishing a conspiracy is merely the first step. Unless a plaintiff can show that the conspiracy deprived her of a protected interest, there is no §1983 cause of action.

### 2. First Amendment Claims

"The First Amendment protects a public employee's right to associate with a union." Hitt v. Connell, 301 F.3d 240, 245 (5th Cir. 2002).

> The First Amendment protects the right of all persons to associate together in groups to further their lawful interests. This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf. Thus, the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do. Such protected First Amendment rights flow to unions as well as to their members and organizers.

9

Boddie v. City of Columbus, Miss., 989 F.2d 745, 749 (5th Cir. 1993) (internal quotations omitted).

To state a First Amendment retaliation claim based upon union activity, a plaintiff must establish three elements: (1) the plaintiff suffered an adverse employment decision; (2) the plaintiff's interest in organizing outweighed the governmental defendant's interest in promoting efficiency; and (3) the protected organizing activity motivated the defendant's conduct. Hitt, 301 F.3d at 245.

"Adverse employment decisions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." Id (quoting Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir.1999)) (internal quotations omitted).  Not all employment activities are actionable, even if they may have had the effect of chilling protected speech. Pierce v. Texas Dep't of Criminal Justice, Institutional Div., 37 F.3d 1146, 1149 (5th Cir. 1994)

### 3. Equal Protection

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against her because of her membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999).

### 4. Due Process

"To bring a procedural due process claim ..., a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001).  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis original).

To bring a claim for substantive due process, the plaintiff must identify a life, liberty or property interest and that the defendant violated that interest via conduct that "shocks the conscience" to the point where it "violates the decencies of civilized conduct." County of

Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Simi Inv. Co., Inc. v. Harris Cnty., Tex., 236 F.3d 240, 249–50 (5th Cir. 2000).

## III. Analysis

Ramirez has pled that Rendon, Juarez, and Gonzales entered into a conspiracy to violate her constitutional rights. Dkt. No. 1. Juarez and Gonzales have asserted that Ramirez has not pled sufficient facts to establish the existence of this conspiracy.

The Court is mindful that, at this stage of the proceedings, Ramirez is merely required to plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" in order to move forward as to her claims of a conspiracy. Twombly, 550 U.S. at 556. Ramirez must also plead facts that indicate there was an agreement between the Defendants to deprive Ramirez of her constitutional rights and that she was actually deprived of those rights. Jabary, 547 Fed. App'x. at 610-611.

For purposes of the present motions to dismiss, the Court will assume that Ramirez has pled sufficient facts to show that there was an agreement between the Defendants. The timeline of events in this case raises a plausible conclusion that the Defendants did not want Ramirez or her union to be able to influence the school board election. This assumption, however, does not end the inquiry. Ramirez must plead facts showing that the named defendants violated or deprived her of her constitutional rights. Jabary, 547 Fed. App'x. at 610-611. For the reasons set out below, Ramirez fails to meet this standard.

### A. Due Process Clause

As to Ramirez's claim that her procedural and substantive due process rights were violated, a necessary element of either claim is that she was deprived of life, liberty or property. Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001) (procedural due process); Simi Inv. Co., Inc. v. Harris Cnty., Tex., 236 F.3d 240, 249–50 (5th Cir. 2000) (substantive due process). According to the complaint, Ramirez asserts that her due process rights were violated when she was placed on administrative leave, with pay, pending the outcome of the investigation and was told not to have any contact with district employees, students, parents

or BISD Board Members. Dkt. No. 29, p. 25

Despite her argument to the contrary, the law does not support this claim. A paid suspension – which does not result in the termination of employment – does not implicate any property interests. Edwards v. California Univ. of Pa., 156 F.3d 488, 492 (3rd Cir.1998); Thomas v. City of DeSoto, Texas, 2002 WL 31039714, *2 n. 4 (N.D. Tex. 2002) (unpubl.) (collecting cases); see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-545 (1985) (noting that a public employer can avoid a due process problem by suspending a public employee with pay). Accordingly, as to this theory, Ramirez has failed to state a claim upon which relief can be granted.

Furthermore, even considering Ramirez's complaint in the most favorable light, she has failed to allege facts that would show the violation of any cognizable liberty interest. "To establish a liberty interest, an employee must demonstrate that [her] governmental employer has brought false charges against [her] that might seriously damage [her] standing and associations in [her] community, or that impose a stigma or other disability that forecloses freedom to take advantage of other employment opportunities." Wells v. Hico Indep. Sch. Dist., 736 F.2d 243, 256 (5th Cir. 1984). To whatever extent the charges against Ramirez were false, she has not pled facts showing that the charges damaged her standing in the community or imposed a stigma on her that foreclosed her freedom to pursue other employment opportunities.

Finally, Ramirez has not alleged that Montoya, the BISD Superintendent, was a member of, or was even aware of, the alleged conspiracy. Because the only act that prohibited her from entering district campuses or having contact with district employees was Montoya's letter, Ramirez has failed to plead that a defendant has violated her rights. Accordingly, this claim should be dismissed.

### B. Equal Protection Clause

Ramirez also claims that the defendants violated her right to equal protection. Dkt. No. 29, p. 25. There are two methods by which a plaintiff can prove such a claim. Ramirez

12

can either establish that: (1) she was intentionally discriminated against based on a protected characteristic; or, (2) she was intentionally singled out for discriminatory treatment for no valid reason. Ramirez has not satisfied either method.

In the case of the first standard, the Court notes that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against her because of her membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999). Union membership is not a protected class. See City of Charlotte v. Local 660, Intern. Ass'n of Firefighters, 426 U.S. 283, 286 (1976) ("this Court would reject such a contention . . . that respondents' status as union members . . . is such as to entitle them to special treatment under the Equal Protection Clause . . . ."). Furthermore, Ramirez has not otherwise pled that she was a member of a protected class, such race, national origin, gender or age. See, e.g., Munoz v. Seton Healthcare, Inc., 557 Fed. App'x 314, 320 (5th Cir. 2014) (unpubl.) (noting those protected categories). Accordingly, this claim must fail.

Under the second method of proving an Equal Protection Clause violation, the plaintiff must allege that an unlawful animus or ill-will motivated her intentionally different treatment from others similarly situated and, further, that no rational basis existed for such treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This basis is sometimes referred to as a "class of one" claim. Id. "As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently." Beeler v. Rounsavall, 328 F.3d 813, 816 (5th Cir. 2003) (emphasis added). The failure to make such a showing is fatal to the claim. Id.

Ramirez has pled no facts showing that there was anyone similarly situated to her – a person engaged in union activity – who was treated differently. Indeed, the complaint does not list any other person who occupied a position comparable to Ramirez's or that such a person was treated differently from Ramirez. The failure to plead such facts mandates dismissal of this claim. Bryan v. City of Madison, 213 F.3d 267, 276-77 (5th Cir. 2000).

### C. First Amendment

Ramirez has raised two separate claims regarding her First Amendment rights: (1) that the Defendants retaliated against her for exercising her First Amendment rights, and, (2) that the Defendants impermissibly infringed on her First Amendment rights by prohibiting her from speaking with her co-workers, students, parents, BISD employees, and the BISD trustees. Ramirez has failed to show any basis for relief under either theory.

#### 1. Retaliation

To prevail on a First Amendment retaliation claim for union activity, Ramirez must show that (1) she suffered "an adverse employment action," (2) her interest in "associating" outweighed BISD's "interest in efficiency," and (3) her protected activity was a "substantial or motivating factor in the adverse employment action." Hitt, 301 F.3d at 246. Even if the Court assumes that the final two factors are present in this case and that these actions were taken by a named defendant in this case, Ramirez has not shown that she suffered an adverse employment action.

As noted earlier, adverse employment decisions typically include discharges, demotions, refusals to hire, refusals to promote and reprimands. Sharp, 164 F.3d at 933. Only two acts by Defendants raise even the specter of a basis for this claim. First, Ramirez's placement on paid administrative leave, pending an investigation. Second, Ramirez's one day assignment in the kitchen. Even assuming the facts as alleged by Ramirez, neither of these actions rise to the level of an adverse employment action.

As to the first possibility, an investigation that does not result in a change in pay, benefits, responsibility, or prospects for promotion is not an adverse employment action. Mora v. Ashcroft, 142 F. App'x 206, 207 n.2 (5th Cir. 2005) (unpubl.); see Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331 (5th Cir. 2004) (holding that a claim that the employer instituted a "baseless racial harassment investigation" against the employee was not an adverse employment action). Thus, placement on paid administrative leave was not an adverse employment action for purposes of establishing a First Amendment retaliation

claim.

In the case of the second possibility – the one day transfer to the kitchen staff – it similarly was not an adverse employment action. The Fifth Circuit has repeatedly concluded that temporary job re-assignments do not constitute adverse employment actions. Anthony v. Donahoe, 460 F. App'x 399, 404 (5th Cir. 2012) (unpubl.); Mylett v. City of Corpus Christi, 97 F. App'x 473, 476 (5th Cir. 2004) (unpubl.); Wafer v. Potter, 275 F.3d 1078 (5th Cir. 2001). Further, "[u]ndesirable work assignments are not adverse employment actions." Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 555 (5th Cir. 1997). Moreover, to show that being moved from bus monitor to kitchen worker was an adverse employment decision, Ramirez must show that she "suffered some serious, objective, and tangible harm as a result of [the] transfer." Serna v. City of San Antonio, 244 F.3d 479, 483 (5th Cir. 2001). Ramirez's subjective perceptions do not suffice to meet this standard. Id.

Furthermore, comparing the types of conduct that do and do not amount to an adverse employment action, supports the conclusion that Defendants' actions do not rise to the level of an adverse employment action. For example, "the following events [do] not constitute adverse employment actions because of their lack of consequence: verbal threat of being fired, reprimand for not being at assigned station, missed pay increase, and being placed on 'final warning.'" Walker v. Thompson, 214 F.3d 615, 629 (5th Cir.2000), abrogated on other grounds, Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).

In contrast, the Fifth Circuit has found adverse employments actions in acts that involved a long-term placement at a job that was clearly a "demotion-like transfer." Burnside v. Kaelin, 773 F.3d 624, 627 (5th Cir. 2014) (sheriff moved sergeant to jail officer position for a year because sergeant supported sheriff's opponent in election); Click v. Copeland, 970 F.2d 106, 110 (5th Cir. 1992) (sheriff moved deputies to jail officer position indefinitely because deputies ran for sheriff).

A purely lateral transfer, however, is not an adverse employment action. Serna, 244 F.3d at 483 (transferring officer from foot and bike patrol to a patrol car was not a demotion-

like transfer); Johnson v. City of San Antonio, 273 F.3d 1094 (5th Cir. 2001) (same).

In this case, the move from bus monitor to kitchen worker for one day is closer to a lateral transfer than it is to a demotion. Ramirez has not pled that there was any change in pay or any other factor which indicates that being a kitchen worker was a less prestigious position. Ramirez has pled no objective facts which establish that the move was demotion-like. Serna, 244 F.3d at 483. Instead, Ramirez has merely argued that she believes that there was "no logical explanation for [her] placement" in food services. Dkt. No. 29, p. 20. Again, her subjective beliefs about the reasons for her placement are insufficient, if not irrelevant, in the required analysis. Serna, 244 F.3d at 483.

In fact the Fifth Circuit has found – in the employment context – that there are certain actions by employers that are so de minimis that they cannot be an adverse employment action. Walker, 214 F.3d at 629 (noting that a claim that the plaintiff was denied a one-time payment of $2.89 in overtime pay was a de minimis action and was not an adverse employment action). Ramirez's one day placement in the kitchen may be such an action.

Rather than allege facts, Ramirez has merely offered conclusory allegations regarding the purported demotion from a bus monitor to kitchen staff. This invocation is insufficient and fails to establish a claim upon which relief can be granted.[7]

### 2. Infringement

Ramirez has alleged that BISD's prohibition on her contacting her fellow co-workers, students, parents, and BISD trustees impermissibly infringed on her First Amendment rights.

---

[7] Federal law prohibits employers from discriminating against employees as to "any term or condition of employment to encourage or discourage membership in any labor organization" 29 U.S.C. § 158(a)(3). Such issues, if timely and otherwise meritorious, may be brought before the National Labor Relations Board. Marshall Durbin Poultry Co. v. N.L.R.B., 39 F.3d 1312, 1315 (5th Cir. 1994). The Court notes that the NLRB has exclusive jurisdiction over claims of unfair labor practices, including violations of § 158. Hobbs v. Hawkins, 968 F.2d 471, 478 (5th Cir. 1992). It appears that the thrust of Ramirez's complaint was that she was suspended from her job because of her union activities. While these facts may lead to a valid claim of an unfair labor practice, they do not state a valid § 1983 claim. See Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 464 (1979) ("the First Amendment is not a substitute for the national labor relations laws").

Dkt. No. 29. Once again, Ramirez has failed to state a claim upon which relief can be granted.

"While the government cannot condition public employment on the relinquishing of First Amendment protection, . . . the government has legitimate interests as an employer in regulating the First Amendment conduct of its employees that differ significantly from those it possesses in connection with the population in general." Vicksburg Firefighters Ass'n, Local 1686 Int'l Ass'n of Firefighters, AFL-CIO, CLC v. City of Vicksburg, Miss., 761 F.2d 1036, 1039 (5th Cir. 1985) (internal citations omitted). A governmental employer has the right to regulate the conduct of its employees. McBee v. Jim Hogg Cty., Tex., 730 F.2d 1009, 1013 (5th Cir. 1984) (a governmental employer has a "legitimate interest in maintaining proper discipline in the public service, to the end that its duties may be discharged with efficiency and integrity.").

Ramirez's claim that she was denied her right of freedom of association fails because the Constitution does not recognize "a generalized right of social association." City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989). Ramirez had no generalized First Amendment right of association to be able to associate with BISD employees, students, parents or trustees. See Cox v. City of Jackson, 343 F. Supp. 2d 546, 570 (S.D. Miss. 2004) (holding that a police officer who asserted that he had not be permitted to associate with other officers after being transferred to another unit did not state claim for a violation of his First Amendment associational rights).

As to Ramirez's right to associate with her fellow union members, she has not stated a claim to relief against any defendant in this case. Governmental actions which limit an employee's "ability to speak, to advocate, or to assemble" concerning unionization may violate the First Amendment. Hobbs v. Hawkins, 968 F.2d 471, 482 (5th Cir. 1992).

In this case, the conditions that Ramirez "refrain from having any contact whatsoever with district employees . . . and BISD Members" and "to stay away from all district campuses and facilities," came from Montoya, the then-superintendent. Dkt. No. 29, p. 13. As noted

17

earlier, Montoya is not a defendant in this case.[8] Further, Ramirez has pled no facts that would tend to show that Montoya was part of the alleged conspiracy. Finally, Ramirez has pled no facts showing that Rendon, Juarez, or Gonzales played any role in drafting the conditions that are the subject of the complaint in this case. As such, Ramirez has not pled facts stating a claim against any of the individual defendants for violating her freedom of association. This claim should be dismissed.[9]

### D. BISD

Even if Ramirez had stated a claim upon which relief could be granted as to the individual defendants, the claims against BISD should be dismissed. Ramirez has failed to show the existence of a BISD policy or custom that violated her constitutional rights.

"Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998). The school district may not be held liable solely under a theory of respondeat superior. Id.

In order to be held liable under § 1983, the local governmental entity must have enacted an official policy that violated the plaintiff's rights. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). For present purposes, an official policy is either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

---

[8] The question of qualified immunity is an affirmative defense, which must be "pled and proved by the defendant." Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 577 (5th Cir. 2009). No defendant has raised that defense in this case, thus the Court does not address it in this report and recommendation.

[9] Ramirez should not be permitted to amend her complaint to add Montoya as a defendant. She has already amended her complaint once to plead additional facts and Montoya's involvement would have been apparent from the letter. The Court should not be utilized as a mere quality control mechanism. Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986) ("[P]laintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

>   2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Id.

Ramirez has not pled facts to show either an official or unofficial policy by BISD that violated her rights. Under Texas law, the BISD board of trustees has the exclusive authority to make policy for the district. Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1245 (5th Cir. 1993); see also TEX. EDUC. CODE ANN. § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district.").

Ramirez has pled no facts showing that the BISD Board of Trustees delegated their policymaking authority to anyone, including Rendon, Juarez, or Gonzales. See Fennell v. Marion Indep. Sch. Dist., No. 14-51098, — F.3d —, 2015 WL 5944434 at *10 (5th Cir. Oct. 13, 2015) (noting that for someone other than the board to have policymaking authority, the record must show that authority was delegated).

If Ramirez seeks to impose liability against BISD based upon Presas-Garcia's actions, that claim fails because Presas-Garcia's actions do not constitute an official policy. While Presas-Garcia is a BISD trustee, only the actions of the board as whole constitute policy. TEX. EDUC. CODE ANN. § 11.151(b); see also U.S. v. Walker, No. 1:11-CR-67, 2011 WL 6181468, at *3 (E.D. Tex. Dec. 13, 2011) ("A school district may only act by and through its board of trustees; statements, or even written agreements, of an employee or even a board member cannot bind the district."). Thus, absent ratification by the entire Board of Trustees, Presas-Garcia's actions cannot be considered the official policy of BISD.

Furthermore, there was no unofficial policy or custom that rose to the level of an official policy. To establish such a custom or policy, Ramirez must show repeated violations of constitutional rights within BISD. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." Bennett v. City of Slidell,

728 F.2d 762, 768 n. 3 (5th Cir. 1984) (en banc).  Ramirez has pled no facts to show that there was a pattern of similar alleged constitutional violations at BISD.  In fact, no other allegations of similar conduct are raised against BISD. This failure is fatal to any claim of an implied policy or custom. Mathews v. Bowie Cnty., Tex., 600 F. App'x 933, 934 (5th Cir. 2015) (unpubl.) (citing Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Because Ramirez has not pled sufficient facts to state a claim upon which relief can be granted against BISD, any claims against BISD should be dismissed.

## IV. Recommendation

It is recommended that the motions to dismiss filed by Brownsville Independent School District, Arturo Rendon, Antonio Juarez and Hector Gonzales – Dkt. Nos. 33, 39 – be granted.  Plaintiff Petra Ramirez's complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on December 7, 2015.

_____
Ronald G. Morgan
United States Magistrate Judge